Good morning, Captain. Good morning. My name is David Greenberg and I represent Mr. Banquels. Before I start, your honors, the case came down Friday afternoon. It's one of my cases in the 2nd Appellate District, Division 8. It's Guelfo, G-E-L-F-O, v. Lockheed Martin, B-178676. The reason I bring that up is because that case held unanimously on a matter of first impression that the employer must reasonably accommodate and have a good faith interactive process even for a perceived disability, and the court held in that case that... Have you given us a copy of that opinion? I'm sorry, your honor? Have you given us a copy of the opinion? No, your honor. I learned about it Friday afternoon. Did you tell the other side about it this morning? No, your honor. I learned about it Friday afternoon. Why didn't you tell the other side about it this morning? There's no reason, your honor. It's not really good practice to spring a case on another lawyer in court. I understand, your honor. I just learned about it Friday afternoon when one of the other attorneys... That doesn't disable you from telling the other lawyer about it this morning, but go ahead. Okay. I'm just bringing that to the court's attention. I'm not citing anything further from it. That's all the information that I had on it. One of the other attorneys told me about it late Friday afternoon. In this case, we're dealing with both fair and reasonable, and you might ask, well, what does the law have to do with fair and reasonable? In this case, the answer is everything, because the law that we're dealing with here is not the American with Disability Act, but it's called the Fair Employment and Housing Act, and so therefore we have to be fair, and as part of that, we have to be reasonable. You don't think under the federal law we have to be fair, only under the state law? Yes, we do, your honor, but specifically California said if the ADA is good, then California will follow it, but if it's not good for the employee, then we can ignore it and go beyond that, and so California specifically points out that we have to go specifically in favor of the employee where possible, and as part of that, they say not only does the employer have to accommodate, but the essence is that the accommodation has to be reasonable. In this case, I don't believe that Mr. Banquels had a disability.  Well, let me read you one line from down in the trial court. Plaintiff does not dispute that he failed to respond to plaintiff's request for information and was never treated for stress-related injuries. It seemed that when your client was asked for information about this, there was no response. Is that right? That is correct, your honor. How do you create the idea that the reason given is a pretext  I will point that out to the court, your honor. He had only filed a worker's comp claim relating to the stress. He had never taken any time off work because of the stress, so how reasonable was it to require him to get a doctor's release from stress when no doctor put him out for stress? He only saw a chiropractor. How reasonable was it to say a chiropractor needs to release him for stress? But the point is he never responded, period. Never gave any of the information that you're trying to cobble together today is a reason. I'm pointing out to the court what else the employer was required to do as part of a reasonable accommodation. Before you get to accommodation, when they took the deposition of the employer's representative, the question was, well, did you do this? Did you do that? Were you making a judgment? She said, I couldn't make a judgment. I didn't have the information. So how can you charge the employer with this information you're giving us when they don't have the information? The only information they had as far as stress was that he filed a worker's comp claim. On the worker's comp claim, no doctor had said that he couldn't work. They knew on the day he filed the worker's comp claim that he had always worked with the stress. The stress was a medical condition, but it was not a disability. So they're saying we need a doctor's note to prove you can come back because of a perceived disability of which you never lost any time from work. He doesn't respond at all. They say to him in a letter, they send a second letter, a third letter. He doesn't do anything. Yes, he did. Okay. What did he do? He tried to keep contacting her. Ms. Pignon did not call. He called her. She did not call him back. She did not return his subsequent phone calls. He kept calling her. That's on page, I think, six in the appellate brief. That's Pignon's deposition where Pignon indicates that he kept calling her, and she didn't call him back. That's not reasonable accommodation. If she had met with him and discussed it with him, which is what they're required to do, he would have been able to show her, I never lost any time from work. Why do I have to get a release from a chiropractor for a stress worker's comp claim of which I never lost any time from? The doctor never put me out on that. Could I just ask you, just to make sure I understand, I thought that Pignon met with him face to face. I don't believe so, but in Pignon's deposition. Okay. I'm just reading from her declaration now. If you have a place that contradicts that, that, of course, would be significant on summary judgment. But she says, after reviewing the progress report, I had face-to-face conversation. I spoke to Vangelis in his native language, Spanish, and then she goes on to say what they said. This is in paragraph nine of her declaration with respect to summary judgment. Is that in dispute? Because that's at odds with what you just told me, that he never talked to anybody in person. And he tried to talk to somebody, but nobody would talk to him. When he called Pignon back, she said to him, I have to check with other people. And she never called him back. What day did she say that? That is in the transcript. I don't have the exact site right now. It's in my brief on page six where I refer to it. When Banquos called Pignon to verify whether he would be permitted to return to work, she told him that she had to confer with other people and call him back. That's part of her deposition. Pignon did not call Banquos back. Neither did Pignon return Banquos' subsequent telephone calls. That certainly wasn't reasonable. And they're asking him to do something. Why don't you do this so that we don't spend your argument time? The clerk has some pieces of paper. You can just note to us the date and the transcript citation. And that way we'll have it precisely. Thank you. Thank you. Do you want to save two minutes for rebuttal? Just a couple more points, Your Honor. The point is they're asking him to do something of which to go back to a doctor. They're requiring him to go back to a doctor. The only doctor he saw was a chiropractor. And ask the chiropractor, give him a note to release him to return to work because of a stress disability of which he was never put out of work in the first place. That's totally unreasonable. Part of an accommodation is to tell Banquos of other jobs that he could do. They never offered him that. Part of the accommodation would be to tell Banquos of any modifications to the job because of the stress. They never offered him that. The bottom line is, could the jury in this case have decided that they did not provide reasonable accommodation? This was a motion for summary judgment. Can we look at any of these facts and say a jury could have decided that they did not provide reasonable accommodation? And that's the only issue before us. Is that your only argument, reasonable accommodation? Well, earlier I pointed out to the court that in the Green case, the appellate court in California said that it was not his duty to prove that he was a qualified individual, but unfortunately that's the Supreme Court. I thought that was basically stipulated here in the Pramathesha case. The California appellate court ruled in my Green case that the employee doesn't have to prove he's a qualified individual. Is that a dispute, though? I thought that we're assuming he is a qualified individual. Yes, that's exactly the point in this case. Qualified that he could do the job. That is exactly this case because in this case the employer is saying you have to prove you can do the job. That's exactly what the employer is saying to him. You have to prove you can do a job for which you never went out on disability. But if the Supreme Court of California upholds the decision in the Green case, he would never have had to prove that in the first place. It would only be the employer. He would only have to show that he had a disability or a perceived disability and they took an adverse action. Then it would be the employer's duty to show that he was not qualified. And what's the perceived disability? The perceived disability is that he can't work because of stress. Because his real disability is not true. That's correct because he always worked with the stress. What was he seeking in the workman's comp claim? You can go out on worker's comp without claiming a permanent, without claiming that you can't do the job. What was he asking for? He had two claims. One was the finger which was the actual disability. One was the stress, right. One was the stress which says I want compensation for medical if I need medical in the future. He never claimed to medical for stress. He never went out on stress. The only doctor he ever saw was a chiropractor. How can that be a disability for stress? Well, it says headache, diarrhea, uncontrollable hunger, activity, sleep disorder, nervous pain on back. That's his second worker's comp, correct? Right, but he never lost any time because of that. He had a medical condition of stress. There's no question about that. I concede that he had a medical condition. Many, many, many people have medical conditions for which they are not disabled. And even if they, and if you perceive the person to be disabled under the Guelfo case, you have to at least offer them reasonable accommodation and have a good faith interactive process. It wasn't reasonable accommodation and it wasn't a good faith interactive process, at least not to the point that a judge could say it as a matter of law without a jury being able to decide the issue. If your client had responded, you might have a good argument. But that puts the burden. I understand, Your Honor. But that puts the burden on him to respond to something for which he's not claiming in the first place. You're asking us to write an opinion pretty much that says if the employer asks for information as a matter of law, you don't have to respond.  I'm saying that that can be that you have to go beyond that if you're an employer and provide reasonable accommodation. Even if he didn't provide, you're asking him to provide something that, of which there's no reason to.  You don't have to respond. The employer then has to start offering you options without knowing precisely what it is, what your problem is. But is it reasonable to ask an employee, any employee, to provide proof that they can do a job when they never claimed they couldn't do the job? Is it reasonable to ask an employee to prove that they don't have a disability when they never claimed the disability in the first place? You're asking him to prove he can come back to work when he never claimed because of stress, when he never claimed at any time that he couldn't do the job because of stress. That's not a reasonable request. Therefore, it's not. Yes, in this particular case, it is not reasonable to say that to the employee. It could be in many cases, especially in a case where the employee said, I have to go out because of the disability. And then it would be reasonable for the employee to say, well, fine. Well, show us that you can come back. And if you can come back, what accommodation you need. But not when you say, I didn't go off for that disability in the first place. All right. Thank you, Kevin. Thank you. Good morning. May it please the Court. Kevin Lucere of Berrien Perkins on behalf of Nestle Prepared Foods Company, doing business with Chef America, Inc. This is a case where the employer did the responsible thing, the ethical thing, and the reasonable thing, and was greeted with silence. Is it ethical to say if you drop your workers' comp claim, you can come back to work? That's not exactly what was said, Your Honor. What was said in the letter? What was said in the letter was an inquiry as to whether or not Mr. Banquels was going to continue with his workers' comp claim with a non- Didn't it say that you can either, you don't come back to work unless you either drop your claim or provide a release, either one will do? Or it also said if he intends to pursue his non-orthopedic claims, he needs to provide information from the appropriate medical care professional so that Chef America can determine whether or not a reasonable accommodation can be made. I thought the letter said that if he dropped his claim, he could come back to work. That was one part of the letter. Do you have the letter in front of you? I have it in the excerpts of record. On the letter, it says that he will not be allowed to return to work until the applicant has been released, either in modified position or released to his usual and customary position regarding all alleged injuries. Of course, if the applicant wishes to withdraw any non-orthopedic complaints from his application, then a medical release of those injuries would not be necessary. Correct. So you're saying that they just wanted to know, can you come back to work, do you have full bill of health to come back to work one way or the other? That's correct. If you drop your claim, that would be enough to be a full bill of health. Well, if he's no longer claiming that he is disabled because of the stress-related injuries, he has filed a workers' compensation action in which, in fact, he is claiming that he is permanently and temporarily disabled due to these stress-related injuries. And that's undisputed, that in the litigated workers' comp action, he's claiming that he's disabled because of the stress-related injuries. Well, is everyone who files a workers' compensation claim discharged? I'm not sure what you mean by discharged. Not allowed to come back to work as long as you have a claim pending? Mr. Banquels was never discharged. Well, it says he wasn't allowed to come back to work is what he says. He wasn't allowed to come back to work until he could provide information. Well, that's what I'm asking. Is everyone who files a workers' compensation claim not allowed to come to work? No. As you phrased that, no, Your Honor. There was these pending claims that he is still pursuing that he is claiming. I understand. Everyone who files a claim has a pending claim. And before the employer can bring that person back to work who claims to be disabled, it's important for the employer to know. Well, he never said, I can't work, to the employer. I mean, somebody who says, I'm not reporting for work because I'm sick. I've got a disability. I'm not reporting for work. But he never said to the employer, according to your opponent, that I can't work because of the stress. Well, in this context. He took off because of his finger. He took off because of his finger. That's correct. So we have an industrial accident involving Mr. Banquels. We have, in the wake of that industrial accident, two workers' compensation claims filed, one for the finger, which is the result of the industrial accident, one for all of these hosts of stress-related injuries, which could very. Those have been no finger industry. He came to work in the normal course every day, and he filed a claim for disability based on stress. But he kept coming to work. Would he have been allowed to work? Well, in that case, Your Honor, the employer certainly would have asked for information having to do with the claim that he's made because, as I read the California law, the employer then would be aware that there's a possible issue with this employee, and they would be triggered to make sure that whether a reasonable accommodation would be needed as to that employee. And that's essentially what was happening here. But the employer was greeted with silence at every turn to try and first determine whether or not a reasonable accommodation was necessary for Mr. Banquels to come back to work. Are you conversant with the world of workman's comp? I am not a worker's compensation attorney, Your Honor. Then I won't ask you. Because it's my understanding that those are withdrawn routinely as they work these things out between employees and employers. And really the crux of the matter is we have Mr. Banquels represented by counsel with regard to these injuries. Chef America deals primarily with his counsel. They have a representative employee in front of them. They don't cross-examine Mr. Banquels in a way that might perhaps compromise his worker's compensation claim. They do tell him in face-to-face meetings and on a telephone meeting what type of information he needs to provide to Chef America. But there's also three letters and one telephone call to his attorney, his legal representative, who's representing him with regard to these injuries, and there's absolutely no response. Had there been any response, then Chef America could have responded to that, and there could have been the interactive good-faith process. There could have been possibly a reasonable accommodation. But Mr. Banquels has to meet us halfway. Was there anything that could fall into the category of a non-response response? In response to your letter, we don't have to respond because you have a duty to interactively determine accommodations for our clients. Was there anything even like that? There was nothing. Okay. Do you have any information as to whether there's anything contradicting the fact that he met with Ms. Pinion, and she told him, I'm glad your finger is fixed. Just let us know if you're okay on the stress to return to work. There's nothing contradicting that. Mr. Banquels submitted a declaration in opposition to the motion for summary judgment. That's not even mentioned. He doesn't deny that. And then also, as Judge McKeown, you already mentioned with regard to Ms. Pinion's declaration, in Mr. Banquels' deposition he also discusses the fact that he had a conversation with Ms. Pinion. He describes it as that she was vague, but he does say that, yes, she did tell me that he needed to provide her with additional medical information. And that's at excerpts of record pages 163 and 164. Let me see. And is the – he hurts his finger, so now he can't come to work, and his finger gets healed. Is the only reason that they need more information because he claimed a temporary period of disability on his stress-related injury? The reason that they need more information – they have enough information on the finger. No, but leave now the finger aside because everything's in good shape on the finger. But is it because he claimed a temporary or permanent disability from his stress that they're asking him, just give us a clear bill of health on your stress? Because it's – That is why – Because you could file a workers' compensation claim and not have any disability arising from it, correct? That's correct. You could get medical payment. People file workers' compensation claims all the time, get injured on the job, and then you get your doctor's bills paid for, right? That's correct. And sometimes you could even, for example, you could lose a finger, and you might not be disabled, but they pay you a certain amount, regrettably, a tiny amount for various injuries, right? So I'm just trying to figure out what's the information that the employer has that makes them say, we don't know if we can clear you. We have the workers' compensation claim itself, in which he's claiming this whole host of stress-related injuries. You know, Mr. Bankwell says that, gee, I claim that I've had these injuries since 1999, and I worked without incident. That's putting aside the fact that he cut his finger off in 2002. But in California, the employer has a very strenuous duty when a possible employee injury is brought to their attention, and this has been brought to the employer's attention. Now, it's not a clean bill of health that was being looked for. It was any information as to what his status was. The only way to get information in a workers' compensation case. Well, putting oneself into the employer's shoes, when they have an employee who's claiming all of these problems, the employer has a responsibility that the employee, when the employee comes back to work, can work safely for himself and also for his co-employees. And it certainly can't be the law that the employer should disregard the fact that they have now been put on notice that their employee is claiming this whole host of injuries. That brings me back to where I was originally. What this case comes down to is when someone files a workers' comp claim, then the employer says you can't come to work anymore unless you satisfy us. Or you satisfy us with medical certificates that you are completely able to do this job, even though you've never told the employer that I can't work. Well, I would take issue in your question. You're saying that I'm completely able to do this job. I would say that the employee should submit information as to exactly what his status is. Because he filed a workers' comp claim. Because he's claiming he's now brought to the employer's attention. Is that not by filing a workers' comp claim? That's how it worked in this case. You didn't bring it to your attention any other way. What I'm saying is when you file a workers' comp claim, an employee files a claim, then the employer says to him, well, don't come to work anymore unless you either drop your claim or you satisfy us with medical certificates that you're able to work, even though the employer is perfectly willing to come to work at all times. Well, I believe that the employer has a duty once it's known that the employee has an injury to engage in the interactive good faith process. And that's what Chef America was trying to do. Under the FEHA, as I read it now, that is what the requirement is on an employer, when the employer is aware that there is a potential injury to an employee or a disability to an employee. Any other questions? Thank you, counsel. Thank you.  Case just argued will be submitted. Next case on the calendar is PACE Integrated Systems v. RLI Insurance.
judges: Reinhardt, Trott, McKeown